SHINDLER, plaintiff in error, *agt.* HOUSTON, defendant in error.

### *Questions discussed.*

1. Whether the evidence in this case showed a *sale and delivery* of a pile of lumber?

2. Whether the agreement of the parties was within the statute of frauds—there being something to be done, to complete a sale and delivery?

THIS was an action of assumpsit, brought in the Troy. justices' court, by Houston against Shindler, to recover the value of a lot of lumber. The plaintiff recovered $55.45 damages and costs. Shindler appealed to the Troy mayor's court.

On the trial in the mayor's court, on the 12th November, 1844, it was admitted by the attorneys for the respective parties, that only the testimony of *James Patterson* be taken as to the sale of June or July, 1841; and that the amount of the lumber be considered as that sworn to by the inspector on the former trial; that there was no evidence that the position of the lumber was changed. Also, admitted that all the lumber was measured on the boat, and was all off the boat at the time of the conversation sworn to, by the witness *Patterson*, on the former trial—that the lumber was measured in two qualities, by the inspector, (qualities and quantities stated,) but without any direction to that effect, from the plaintiff or defendant. And that the price testified to amounted to $52.51.

The testimony of *James Patterson*, the only witness, is here given entire, as follows:

I know the parties by sight; acquainted with plaintiff for a good many years. I was present at a conversation between the parties, relative to the purchase of some lumber, the latter part of June or the fore part of July, 1841. It was on the dock known as House's dock, in Troy. Plaintiff came into Troy with two or three boat loads of lumber, and he sold his lumber principally to Mr. House; and he had a little lot of lumber, of scantling and curled maple, that he also wanted to

sell to House. House declined buying the curled maple and scantling, till it came off the boat, so that he could see it. After the lumber came off the boat, and was piled on the dock, plaintiff said to House, " now give me an offer for the lumber which is now off the boat." House replied, " I am in a hurry, and I have no time to make a bargain with you. There is a man," says he, pointing to defendant, " who will buy it of you." This was the first time I had seen the defendant. Plaintiff asked House if Shindler (defendant) was responsible or good; I think he said good. House said, any bargain he would make with him for the lumber, he, House, would pay it. Then plaintiff motioned to defendant with his finger, and said, " Halloo ! man, this way "—defendant came up to where we were, and asked what was wanted ; plaintiff told him (defendant) to make an offer for that lumber, which was now off the boat ; defendant asked him what he asked for it ; plaintiff told him, he asked four cents a foot for the plank, (curled maple,) and defendant told him he could not give that; then, plaintiff says, " What will you give for the plank ?" Defendant told him he would give him three cents a foot; then plaintiff asked him what he would give for the scantling ; defendant said he would give $1\frac{1}{2}$ cents a foot for them ; plaintiff said, " the lumber is yours." Defendant told plaintiff to go to the inspector, and get the inspector's bill of it, and carry it to Mr. House, and Mr. House would pay it, for he (defendant) was in a hurry to go to New-York that afternoon. I don't recollect of any remark further at that time being made. I am not positive that defendant said anything about lumber being taken on the boat. In reply to question ; no one was present except defendant, plaintiff and myself, at the conversation ; there were men tending to lumber two or three rods off, or less—a short distance ; I was sitting on the plank in question at the time of the conversation ; I went with plaintiff to House's office, I think the next day, but it might have been the day after; I was with the plaintiff when he received the inspector's bill from the inspector, and saw him receive it ; that bill was presented House at his office at the time I went there; when plaintiff presented

the inspector's bill to House, House looked at it, and said defendant had been there and left a memorandum of how it was to be paid, and read it over to plaintiff; plaintiff said that was not according to the contract, and House said he didn't know anything about that; plaintiff told House what the contract was, and asked me if those things were so or not; I told him they were; he did not pay for the lumber, and said, as a reason. that defendant said that the bargain was different, and he did not wish to depart from the instructions of his friend, as he had a great deal of dealing with him. My impression is, that the lumber was measured by Mr. Ostrom, as it came off the boat; I saw the inspector measuring the lumber on the boat, and I know it was the same lumber, as I had tried to purchase it at Brockport; I refer now to the plank; the plank and scantling were both off the boat at the time of the conversation; I did not see the inspector measuring scantling—only the plank; I think this conversation on the dock was in the afternoon.

And the said counsel for the said appellant did then and there request the said recorder to charge the said jury:

1. That the right of property in said lumber did not pass by the agreement, it being within the statute of frauds; and that the sale was incomplete, there being something yet to be done.

2. The delivery of the inspector's bill was a condition precedent to a vesting of the right of property in the defendant, appellant, and that the defendant, appellant, having the next day, at the time the inspection bill was presented, declined paying for the lumber, the right of property did not pass to defendant, appellant, but remained in the plaintiff, appellee; and that defendant, appellant, is not liable therefor, as for lumber sold and delivered.

But the said recorder refused and declined so to charge the jury. To which the said counsel for the said appellant did then and there except.

And the said recorder did then and there declare, and deliver his opinion to the jury aforesaid, that the several matters so produced, and given in evidence as aforesaid, were sufficient to entitle the said appellee to a verdict; if they believed it

Shindler *agt.* Houston.

was the intention of the parties to consider the lumber delivered at that time, and that nothing further was agreed or contemplated being done to pass the title and possession of the lumber. To which opinion and charge of the said recorder, the said counsel for the said appellant did then and there except.

And the said recorder did then and there declare, and deliver his opinion to the said jury, and charged them that the contract was not within the statute of frauds, and required no note or memorandum in writing, and to be subscribed by the party to be charged thereby, provided the jury should find, from the evidence, that there was a delivery of the lumber, and an acceptance of the same, by the defendant, appellant. To which opinion and charge of the recorder, the said counsel for the said appellant did then and there except.

The jury found a verdict for the plaintiff, of $52.51 damages. Judgment having been entered, Shindler brought a writ of error, and removed the judgment to the supreme court. Where, at January term, 1845, the judgment of the mayor's court was affirmed. Shindler brought error, and removed the judgment to the court of errors; and the proceedings subsequently were transferred to this court.

*J. A. Millard, attorney and*
*Gardner Stow & N. Hill, jr., counsel* for plaintiff in error.

*First.* The sale was not complete. No property passed.

1. Because the bargain was not closed. No promise was made by Houston, that he would procure the inspection bill and deliver it to House. He was still at liberty to sell to any body else. He said nothing to *bind* himself; and when one party is not bound, the other is not bound. (4 *Bing.* 653; 3 *Turn. R.* 653.)

2. The sale was not complete, because something was to be done by the vendor. The getting of the inspection bill, and delivering it to House, was a *condition precedent* to be performed by Houston. Until then, the sale was not *absolute,* but *condi-*

Shindler *agt.* Houston.

*tional.* It might never be performed; and in that case, the property would remain in *statu quo.* (7 *Wend.* 330.)·

3. The sale was intended to be a *cash* sale. Its terms show that no credit was intended on either side. The law in such a case, from necessity, makes the delivery of the thing sold, and the payment of the price, contemporaneous acts. The property could not pass until the price should be paid. (6 *Cow.* 110, 113; 2 *Barn. & Cress.* 540; 15 *John.* 349; 6 *Barn. & Cress.* 364; 6 *Cow.* 250; 5 *Barn. & Cress.* 757; 7 *Cow.* 85; 13 *East,* 522; 3 *Wend.* 112; 3 *New Hamp. R.* 382; 14 *Wend.* 31; 2 *Maule & Sel.* 397; 6 *East,* 414; 5 *Taunton,* 617, 621; *Bull. N. P.* 50; 2 *Hen. Blac.* 3, 16.)

*Second.* The case is within the statute of frauds, requiring a note in writing.

There was no *acceptance and receiving* of the lumber by Shindler, the vendee, within the intent and meaning of the statute.

To take the case out of the statute, there must be something more than what would be sufficient to *change the property at common law*—something more than would be sufficient to constitute a *delivery* at common law. .

The elements which enter into and constitute a complete sale and·transfer of goods, when the price is $50 or more, and there is no note in writing, and no payment of the purchase money, are as follows, viz.:·

1. A *bargain* intended to change the right of property. This is the act of *both* parties.

2. A *delivery* of the property and the *actual possession, discharged of all lien,* to the *vendee* as *absolute owner.* This is the act of the *seller.*

3. An *acceptance* and *receiving* of the entire property, and *actual possession* of some part of the goods, as *absolute owner, discharged of all lien for the purchase money.* These are the acts of the *buyer.*

There was nothing proved here but the *bargain;* and that was void by the statute of frauds. (3 *Bos. & Puller,* 233; 6 *Barn. & Cress.* 351; *Chit. on Con.* 389, 390; 3 *Dowl. & Ryl.*

220, 822 ; 2 *Barn. & C.* 37 ; 3 *John.* 399 ; 10 *Bing.* 101, 376 ; 5 *Barn. & C.* 511, 514 ; 2 *Mee. & W.* 602, 656 ; 21 *Pick.* 384 ; 5 *Barn. & Ald.* 559 ; 1 *Dowl. & Ryl.* 128 ; 22 *Wend.* 659 ; 1 *Car. & Payne,* 272 ; 3 *Barn. & C.* 1 ; 2 *Car. & Payne,* 532 ; 4 *Maul. & Sel.* 262 ; 9 *Barn. & C.* 561 ; 7 *T. Rep.* 15, 17 ; 1 *C. & M.* 333 ; 6 *Wend.* 400 ; 11 *John.* 284.)

The recorder then erred.

I. In refusing to non-suit the plaintiff below.

1. Because there was no dispute about facts, and the whole question resolved itself into a question of law.

2. Because there was no proof of any kind, to show that there was an *acceptance and receiving* of the lumber, on the part of Shindler, within the meaning of the statute, upon which a jury could deliberate.

II. In refusing to charge the jury as requested.

1. Because the contract was void by the statute of frauds.

2. Because the sale was not complete—there being something to be done—the delivery of the inspector's bill.

3. Because the delivery of the inspector's bill was a condition precedent.

*Third.* The recorder further erred in this. That he misled and misdirected the jury in charging, that Houston was entitled to a verdict, if the jury should believe that it was the intention of the parties to consider the lumber delivered at the time of the bargain, and that nothing further was agreed or contemplated to pass the title and possession of the lumber.

1. Because it implied, and left the jury to infer, that they ought to find for Houston, if there was no proof that anything further was agreed on, or contemplated, to pass the title and possession of the lumber.

2. Because, by referring the matter to their *belief*, he left the jury to speculate about facts not proved, and come to conclusions without the proof of any facts from which they could be legally inferred. He might as well have left them to " believe " a note in writing had been executed—since there was no more evidence to prove an *acceptance and receiving* of the lumber, than to prove a note in writing.

Shindler *agt.* Houston.

3. Because the recorder directed the attention of the jury to the *intention* of the parties, as the material object of inquiry, instead of the requirements of the statute of frauds; when he should have directed them to inquire (if indeed it were necessary to submit anything to the jury,) whether any facts and circumstances were proved to establish clearly, that Shindler had *accepted and received* the lumber, or some part thereof, as required by the statute.

4. Because the recorder, in his charge to the jury, did not discriminate between the facts, which might suffice for a sale and delivery at common law; and the facts amounting to an *acceptance and receiving* of the goods, necessary to a complete sale and transfer of the property under the statute,—thus misleading them from the'true point of inquiry, the *acceptance* and receiving, under the statute; and confounding in their minds the distinction between the common law and statutory modes of passing property, where its value is $50 or more.

·5. Because the charge *tended,* if it were not *calculated,* to impress the jury, that if the parties "*considered*" the lumber delivered at the time of the bargain, it was enough to entitle Houston to recover, though there was no proof of an actual acceptance and receiving of the lumber by Shindler. The *act of accepting and receiving* required by the statute, to dispense with a note in writing, implies more than a simple act of the mind.

6. Because the recorder's charge left the jury to infer that their *belief* would justify them in finding that the title and possession of the lumber passed to Shindler, though nothing was found to show his actual acceptance and receiving of it, or from which they could infer it.

7. Because the recorder, in effect, told the jury they were at liberty to find that Shindler accepted and received the lumber, though there was nothing proved in the case to establish it, or from which it could be legally inferred.

*Fourth.* The recorder erred, because, in charging the jury that the contract was not within the statute of frauds, provided they found from the evidence that there was a delivery of the lum-

ber, and an acceptance of the same by Shindler, he thus *assumed* that there *was* evidence from which they might legally infer such delivery and acceptance ; and because he thus left to the jury to determine, without instruction, what constituted a *delivery and acceptance,* which is a question of law, as well as to determine whether the facts existed, which prove such a delivery and acceptance—and the charge thus tended to mislead the jury.

☞ *N. Hill, jr.,* in reply.—*Story on Sales,* § 295. 4th speaks of delivery ; 2 *B. & C.* 37, HOLROYD, J. ; *Story on Sales,* § 273 ; 3 *J.* 421.

Resting on *mere words,* this case goes *beyond any in the books.* No other case dispenses with *acts*—besides, cases say, UNEQUIVOCAL *acts.*

Depends on the *form of expression*—they *mistake* in this, witness changes the case. 2 *Kent,* 491 ; *Story on Sales,* § 290, 294.—*Forms of expression—phrases*—are not the species of evidence. The statute calls for—WRITING, or ACTS. Words, &c., very evil legislature intended to remedy. 1 *East,* 192, cited in opposition, strongest case can be found—strongest case for the other side—there vendee *sold to a third person who removed the stack of hay*—no other case goes so far—ponderous, he says, need not be handed over—statute says, shall be, or something else—Key, &c.,—he don't say *words*—a *visible symbol handed over in presence of witness.*

10 *Bing.* 99, 101, TINDAL, C. J., *on* 1 *East* ; 12 *Mass.* 300 —*nothing to do with statute frauds*—not even mentioned—was bill parcels—sufficient to take it out of the statute. 11 *Mass.* 6 ; 2 *M. & S.* 286 ;—no case has been found where *constructive* delivery held enough under statute of frauds—*column of granite*—civil law—two kinds of delivery. *Wood's Inst.* 99, 100 ;—that law had nothing in it like our statute of frauds. *Just. Inst.* (HARRIS) *G.* 3, *tit.* 24, *note ; cites* 7 *Wend.* 389 ;— nothing to do with statute frauds—contract for work and labor under modern cases—work done and payment made—and question not made. 13 *Pick. ;*—don't help this case. 2

*Bing.* ;—plaintiff must *free the case from all doubt*, or safest to adhere to statute. ☞

P. T. *Woodbury, attorney,* and
Jno. D. *Willard* & J. A. *Spencer, counsel,* for def't in error.

*First.* There was a sale and delivery. The parties were standing by the lumber, and after some chaffering about a bargain, Shindler makes an offer for the lumber ; Houston accepts it, and says, " the lumber is yours." Shindler assents to this —assents to the proposition that the property is transferred to him—and directs Houston how and where to get his pay. The parties separate without any provision to meet again—Shindler going off immediately to New-York. Before going, however, he further recognizes his own title to the property, by directing his agent in Troy to pay for it—(*see printed case, folios* 28 *and* 30.) There was all the delivery necessary in the case of cumbersome articles. In *Bates* v. *Conkling,* (10 *Wend.* 389,) the supreme court held, considering the nature of the articles, that piling up boards, and giving notice to the purchaser, was a sufficient delivery, and transferred the title—although the purchaser never moved the property, and it did not appear that he or his agents ever saw it. So, when the vendor takes the vendee in sight of ponderous articles, such as a column of granite, or logs lying in a boom, it amounts to a delivery, without any change of position of the articles. (2 *Kent's Com.,* 500, 501, 4*th ed.; Chaplin* v. *Rogers,* 1 *East,* 192 ; *Jewett* v. *Warren,* 12 *Mass. Rep.* 300.)

*Second.* But it is said, something remained to be done. The testimony does not show that anything remained to be done ; every thing which the vendor had to do was done—the sale was complete. (*Chitty on Con.* 375 ; 2 *Kent's Com.,* 492.) We admit, that although a contract for the sale of goods be complete and binding in other respects, the property in them remains in the vendor, and they are at his risk, if any material acts remain to be done before the delivery, either to distinguish the goods, or ascertain the price, unless there is an understand-

Shindler *agt.* Houston.

ing to deliver before the material thing is done. This is the whole doctrine of the cases of *Outwater* v. *Dodge*, (7 *Cowen*, 85 ;) *Ward* v. *Shaw*, (7 *Wend*. 406 ;) *Fitch* v. *Losee*, (15 *Wend*. 221 ;) *Downs* v. *Ross*, (23 *Wend*. 270 ;) *Downer* v. *Thompson*, (2 *Hill*, 137.) But the circumstances of each of those cases differ materially from the present one. In each of them, some material thing remained to be done to the goods, before legal delivery could take place—such as separating the goods off from a large quantity, and appropriating them to the vendee, or weighing, counting, or otherwise ascertaining the price, quantity, or quality. The court, therefore, held that there had been no legal delivery in consequence thereof—something remained to be done before there could be a delivery. Not so in this case. Here, every thing material to be done by the vendor, was done, when Houston says "the lumber is yours," and Shindler indicates the method of payment, to which Houston assents, and the parties separate not to meet again. The lumber had been previously measured on board the boat, and was at this time on the dock. The rate at which it was sold, was fixed in the conversation ; the quantity had already been ascertained by the inspection. Not only did nothing *material* remain to be done, but *nothing whatever* remained to be done. It will not be pretended the mere arithmetical ascertainment of the aggregate price, (the quantity having been previously ascertained, and the price per foot agreed on,) was such a material thing remaining to be done, as to prevent a transfer of the property. It was held by TINDAL, C. J., in *Tansley* v. *Turner*, (2 *Bing. N. C.* 151,) that the property in trees passed to the purchaser, although the sum total of the cubical contents had not been ascertained, the trees having been marked by the purchaser, and the cubical contents of each ascertained. All the judges concurred. In the case before the court, the measurement and computation had gone further, and were complete, and the whole quantity ascertained. (*See stipulation as to the facts of measurement, &c., printed case, fol.* 24.)

☞ *Brown on Sales*, 44—to put it in a deliverable state. 13 *Pick.* 183, *cites above.* ☜

44

Shindler *agt.* Houston.

*Third.* But it was urged on the trial, that the delivery of the inspector's bill, was a condition precedent to the vesting the right of property in Shindler. If so, it must have been because the parties stipulated for it by their agreement; and that there was any agreement or understanding of the kind, is wholly unsupported by the proof.

After Houston said " the lumber is yours," Shindler told him " to go to the inspector, and get the inspector's bill of it, and carry it to Mr. House, and House would pay for it; for he (Shindler) was in a hurry to go to New-York that afternoon."

What is there here which shows that the parties had agreed that the delivery of the bill should be a condition precedent to the transfer of the property? It was to be a condition precedent only to the payment.

*Fourth.* The jury have found whether or not anything remained to be done by the vendor, after the conversation sworn to by Patterson; at all events, it was the intention of the parties to consider the lumber delivered at that time, and that nothing further was agreed, or contemplated being done, to pass the title and possession of the lumber. This point was distinctly presented to them by the recorder, and found by them in favor of the defendant in error. (*See printed case, folio* 34.)

☞ 3 *J.* 414, to show question for jury. ☜

It will not be denied, that, even if anything remained to be done, which might otherwise have been necessary, in order to transfer the title, it was competent to the parties to waive this as a condition precedent, and to make a delivery if they so agreed; and that whatever remained to be done, might be done after the sale and delivery. (*Riddle* v. *Varnum,* 20 *Pick.* 280; *Macomber* v. *Parker,* 13 *Pick.* 182.)

The jury also found that there was a delivery of the lumber, and an acceptance of the same. (*See printed case, fol.* 34.)

It was a question of *fact,* peculiarly within the province of a jury to decide; and their finding will not be disturbed, if there was any evidence to support it.

*Fifth.* The recorder certainly decided right, in submitting

Shindler *agt.* Houston.

the questions of fact to the jury, which he did submit to them ; but if not, Shindler (the original defendant, but plaintiff in error,) has no right to complain. If the recorder erred at all, it was in submitting to the jury *any* question of fact, instead of charging them that Houston (the plaintiff below,) was entitled to tneir verdict.

*Sixth.* The judgment of the supreme court should be affirmed.

DECISION.—*Judgments reversed, with venire de novo, by the supreme court—costs to abide event.* For *affirmance*—JEWETT, Ch. J., and GRAY, J. For *reversal*—BRONSON, JONES, GARDINER, WRIGHT, JOHNSON and RUGGLES, JJ.

NOTE.—GARDINER, BRONSON and WRIGHT, judges, delivered written opinions, in which they substantially *held*,—That the statute of fraudulent conveyances and contracts pronounced this agreement, when made, void, unless the buyer should "accept and receive some part of the goods." The language is unequivocal, and demands the action of both parties ; for acceptance implies delivery, and there can be no complete delivery without acceptance. The defendant, however, said nothing, and did nothing subsequent to the agreement, except through his agent, to repudiate the contract. There was consequently no evidence of delivery.

Mere *words* of a contract, unaccompanied by any act, can not amount to a delivery. A writing must be made—part of the purchase money must be paid, or the buyer must accept and receive part of the goods. Here there was no delivery, either actual or symbolical.

There must not only be a delivery by the seller, but an ultimate acceptance of the *possession* of the goods by the buyer. And this delivery and acceptance can only be evinced by unequivocal acts, independent of the proof of the contract.

*Reported* 1 *Comstock,* 261.